Stewart vs. Harry.

CASE 95—PETITION ORDINARY—MAY 28.

# Stewart vs. Harry.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. The Federal courts, under the act of Congress of 1789, known as the judiciary act (1 *Brightley*, 230), have exclusive jurisdiction of all cases in admiralty arising on waters navigable from the sea by vessels of ten or more tons burden; *saving to suitors, in all cases, the right of a common law remedy where the common law is competent to give it.*

2. All State laws conferring jurisdiction upon State courts in cases of admiralty, of which the Federal courts have exclusive jurisdiction under the act of Congress of 1789, are unconstitutional and void to the extent they infringe said act of 1789, and only to that extent. (*The Hine vs. Trevor*, 4 *Wallace*, 555; *The Moses Taylor, Ibid*, 411; 22 *Howard*, 243.).

3. The distinguishing and characteristic feature of a suit in admiralty is, that the vessel or thing proceeded against, is itself, seized and impleaded as a defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty, over the vessel or thing itself, which gives to the title made under its decrees validity against all the world. By a common law process, whether of mesne attachment or execution. property is reached only through a personal defendant, and then only to the extent of his title. (*The Moses Taylor*, 4 *Wallace*, 427; *Broadwell vs. Swigert et al.*, 7 *B. Mon.*, 39.)

4. The State courts have jurisdiction in cases of collision between two boats—the result of mutual and equal fault—in a personal action, by the owner of one boat, against the owner of the other, to recover such amount, as will apportion the loss ensuing from the collision between the two boats, according to their relative value, as provided in *section 16, chapter 7, of the Revised Statutes* (1 *Stanton*, 207). It is not a proceeeing *in rem* against the boat, but a personal action against its owner, resulting in a personal judgment against him. Said statute is regarded in this case as simply modifying the common law remedy. The State court has jurisdiction according to the express reservation in the act of Congress of 1789, "*saving to suitors in all ases the right of a common law remedy where the common law is competent to give it.*"

5. As *section* 16, *chapter* 7, *of the Revised Statutes* enlarges the power of the court, by enabling it to give redress in a state of case, and in a mode not provided for by the common law unaided by statute, it may be said to confer on the court additional jurisdiction. But as the *exclusive* cognizance conferred on the Federal court by the act of Congress of 1789 relates only to "civil actions of admiralty and maritime jurisdiction," it is obvious that a statute of a State regulating the proceedings in a personal action like this, which is not a suit in admiralty, is not repugnant to the act of Congress of 1789, although the statute, as it relates to the subject of commerce, may be such as Congress might have constitutionally prohibited by giving to the Federal courts a more comprehensive jurisdiction than that conferred by the act of 1789.

6. The grant of power to Congress "to regulate commerce among the several States" does not of itself in all cases exclude the States from exercising authority over its subject-matter; and it is not the *mere existence* of such a power, but *its exercise by Congress*, which may be incompatible with the exercise of the same power by the States; and, therefore, the States may legislate on the subject in the absence of congressional regulations. (12 *Howard*, 299; 2 *Peters*, 251; 12 *Alabama*, 197.)

**T. B. & J. B. Cochran,**          **For Appellant,**

CITED—

*Revised Statutes, chap.* 7, *sec.* 16.

*9th sec. Judiciary Act of Congress of* 1789.

·4 *Wallace,* 571 ; *The Hine vs. Trevor.*

10 *Wheaton,* 473 ; 6 *Howard,* 344.

12 *Howard,* 466, 468 ; *Fritz vs. Bull.*

5 *Howard,* 441 ; 4 *Wallace,* 431 ; *The Moses Taylor.*

*Act of Congress* 1852, *U. S. Stat. at Large, vol.* 10, *p.* 61.

*Act of Congress of* 1845.

7 *B. Mon.,* 39 ; *Broadwell vs. Swigert.*

**Wm. Atwood,**          **For Appellee,**

CITED—

*Revised Statutes, chap.* 7.

*U. S. Stat. at Large, vol.* 9, *secs.* 18, 29, *pp.* 70, 72.

17 *B. Mon.,* 37 ; *Wilson vs. McGuire.*

Stewart vs. Harry.

16 *B. Mon.*, 677 ; *Bentley vs. Bustard.*

18 *Howard*, 584.

1 *Newberry*, 227 ; *The Gale vs. Miranda.*

*U. S. Constitution*, art. 3, secs. 1, 2.

*Act of Congress* 1789, sec. 9.

4 *Wallace*, 427 ; *The Moses Taylor.*

4 *Wallace*, 555–71 ; *Hine vs. Trevor.*

1 *Newberry*, 297 ; *Ashbrook vs. Golden Gate.*

*Am. Law Reg.* (new series), vol. 6, p. 596, Aug., 1867.

3 *Story on Con.*, 1st ed., note to sec. 1666 ; '2d ed., note to sec. 1672.

5 *Howard*, 441 ; *Waring vs. Clark.*

16 *B. Mon.*, 577 ; *Kountz vs. Brown.*

3 *Met.*, 535–6 ; *Sparks vs. Kate French.*

4 *Met.*, 39 ; *Yeaker vs. Yeaker.*

2 *Peters*, 526 ; *Bank of Hamilton vs. Dudley.*

22 *Howard*, 243 ; *Sinnot vs. Davenport.*

28 *Ala.*, 185 ; *Commissioner, &c., vs. S. B. Cuba.*

4 *California*, 46 ; *People vs. Coleman.*

1 *Newberry*, 73 ; *Riggs vs. John Richards.*

18 *How.*, 71 ; *Smith vs. State of Maryland.*

3 *Gray*, 268 ; *Dunham vs. Lampton.*

2 *Gray*, 339 ; *Commonwealth vs. N. Bedford Bridge.*

18 *Mo.*, 238 ; *St. Louis vs. McCoy.*

14 *How.*, 568 ; *Veazie vs. Moore.*

4 *Sandford*, 492 ; *Fitch vs. Livingston.*

4 *Georgia*, 26 ; *Mayor of Savannah vs. State.*

18 *Conn.*, 500 ; *Thames Bank vs. Leviel.*

3 *Dana*, 279 ; *Church vs. Chambers.*

18 *La. An.*, 289 ; *Portwardens vs. Martha J. Ward.*

19 *California*, 82 ; *Addison vs. Saulnier.*

42 *Penn.*, 219.

4 *Wheaton*, 122, 195 ; *Sturges vs. Crowningshield.*

6 *Cranch*, 87 ; *Fletcher vs. Peck.*

10 *How.*, 415 ; *Butler vs. Pennsylvania.*

21 *How.*, 184 ; *James Gray vs. Fracer.*

4 *Wallace*, 713 ; *Gillman vs. Philadelphia.*

1 *Black.*, 603 ; *Conway vs. Taylor's ex'r.*

2 *Peters*, 252 ; *Wilson vs. Black Bird, &c.*

12 *How.*, 299 ; *Cooley vs. Wardens of Philadelphia.*

16 *B. Mon.*, 602 ; *Dryden vs. Commonwealth.*

16 *B. Mon.*, 794–8 ; *Newport vs. Taylor's ex'rs.*

*Chitty's Pleadings*, 86, 87 ; 9 *Am. from 7th London ed.*

*Story on Partnerships, secs.* 167, 458, 3*d ed., notes* 1 *to*
  6, *Am. from* 8*th London ed.*

*Abbot on Shipping*, 131.

1 *Wash. C. C.*, 142 ; *Stone vs. Killand.*

4 *Dallas*, 206 ; *Bussey vs. Donaldson.*

1 *Dallas*, 184 ; *Purviance vs. Angus.*

1 *Peters' Ad.*, 245 ; *Atkins vs. Burrows.*

*Bus. Ad.*, 369 ; *Dean vs. Angus.*

*Story on Agency, secs.* 316, 318, 453, 454, 4*th ed.*

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

The appellee, as the owner of the steamboat S. P.
Hibberd, which was sunk by a collision with the boat
called the Chancellor, in the Ohio river, on the 26th
day of July, 1860, prosecuted this action against the
appellant as one of the owners and managers of the
Chancellor, to recover damages, as partial compensa-
tion for the loss of his boat, to be estimated on the
basis that the collision was the result of mutual and
equal fault on the part of the managers of the two
boats, according to the provisions of the 16*th section of
chapter* 7 *of the Revised Statutes*, which declares that:

"If the collision between two boats be the result of
mutual and equal fault, or, if it cannot be ascertained
which was in fault, the loss or damage ensuing from

the collision shall be apportioned between the two boats, according to their relative values, exclusive of cargo."

The defense controverted the averments imputing any fault to the managers of the Chancellor, and a trial of this issue resulted in a verdict and judgment for the plaintiff for four thousand two hundred and ten dollars and fifty-two cents; and the court having refused to grant the defendant a new trial, he has appealed to this court.

The appellant now seeks a reversal of the judgment on three grounds:

1. That the court, being a State tribunal, had no jurisdiction of the subject of the action.

2. That the court erred in giving and in refusing instructions to the jury asked on the trial.

3. That the verdict was not sustained by the evidence.

The first of these objections to the judgment involves the constitutionality of said 16*th section of chapter* 7 *of the Revised Statutes*, and rests upon the assumption that that provision, and all laws of this State intended to confer upon the State courts jurisdiction in cases like this, are in conflict with the act of Congress passed in pursuance of that clause in the Federal Constitution which confers on Congress the power "to regulate commerce with foreign nations and among the several States," and are therefore void.

The act of Congress referred to (1 *Brightley's Digest*, 230) is the act of September 24th, 1789, known as the judiciary act, and provides that the district courts of the United States "shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under the laws of impost, navigation, or trade, of the United States, where the seizures

Stewart vs. Harry.

are made on waters which are navigable from the sea by vessels of ten or more tons burden ;. * * * *saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."*

The effect of this enactment upon State laws in conflict with it, or which purport to confer upon State courts the jurisdiction which it exclusively vests in the Federal judiciary, has been the subject of repeated adjudications, some of them of recent date, and by the Supreme Court of the United States; and we regard the principle as authoritatively settled, that all such State laws are unconstitutional and void; to the extent that they infringe the provisions of the congressional enactment, and only to that extent. (*The Hine vs. Trevor*, 4 *Wallace*, 555 ; *The Moses Taylor, Ibid*, 411 ; 22 *Howard*, 243.)

Whether, therefore, the court had jurisdiction in this case or not seems to depend on the nature of the action and the kind of remedy sought by the plaintiff.

If the proceeding was according to the common law, as modified or improved by statute, and the remedy was such as the law of the State was competent to give, then, in our opinion, the court had jurisdiction, according to the express reservation in the act of Congress.

In the case of *The Moses Taylor* (4 *Wallace*, 427), the supreme court, in commenting on the nature and incidents of a suit in admiralty, as distinguishing it from a common law proceeding, said : " The distinguishing and characteristic feature of such suit is, that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world. By the common law process, whether of mesne attachment or execution,

property is reached only through a personal defendant, and then only to the extent of his title."

The distinction thus clearly drawn between a suit in admiralty and a proceeding at common law is not different from that which was taken by this court in *Broadwell vs. Swigert et al.* (7 *B. Monroe*, 39) ; and if we adopt it, as we think we may, as a judicial test for determining whether this is a suit in admiralty or a common law proceeding, the conclusion that it is not a case in admiralty is inevitable.  It is not a proceeding *in rem* against the steamboat Chancellor, but a *personal* action against the appellant, resulting in a *personal* judgment against him as a partial compensation for the loss of his boat, estimated according to a law of the State, just and equitable in its provisions, and applicable to common law proceedings.

We perceive no valid objection to any of the instructions given by the court.  They seem to us to fairly present the questions to be determined by the jury from the evidence, according to the principles of law applicable thereto.

Nor do we think the court erred, as insisted for the appellant, in refusing to give the last instruction asked, by which the court was, in effect, asked to tell the jury that, although the accident, which occured on board the Hibberd, was not the consequence of negligence or misconduct, such unavoidable misfortune was, nevertheless, a fault on the part of that boat.  In one of the instructions, which were given at the instance of the appellant, the jury were properly informed, that if the accident caused or contributed to the collision, and was the consequence of neglect or a failure to provide sufficient tackle on the Hibberd, such neglect or failure was a fault on the part of the Hibberd, although the engi-

neer of that boat, who procured the line attached to the safety-valve, the parting of which seems to have caused the accident, " may have thought the line a good one." And thus, it seems to us, the court correctly explained to the jury the effect which should be given by them to the accident and its probable causes; and to have gone further, and treated the accident, however produced, as culpable misconduct on the part of the managers of the Hibberd, would, in our opinion, have been an error to the prejudice of the appellee.

With regard to the remaining question, whether the evidence sustained the verdict of the jury, it seems to us, upon a careful examination of the evidence, not only that there is no such preponderance of the evidence against the verdict as would have authorized the granting of a new trial on that ground, but that the verdict is in accordance with the weight of evidence, and such as should have been rendered in the case.

Wherefore, the motion for a new trial having been properly overruled, the judgment is affirmed.

---

To the petition of T. B. & J. B. Cochran, in behalf of appellant, for a rehearing—

JUDGE HARDIN DELIVERED THE FOLLOWING RESPONSE OF THE COURT:

We are very earnestly asked by the counsel for the appellant, in the petition for a rehearing, to review the grounds of the opinion delivered in this case, and particularly with reference to two points, on which it is insisted that our conclusion, as to the jurisdiction of the lower court, is incorrect.

The principles of the opinion on this subject are of such importance that we deem it proper to respond to the objections of the counsel on the points referred to—

1st. As the Constitution of the United States confers on Congress the power " to regulate commerce with foreign nations and among the several States," it is contended that " a State cannot exercise any such power, although Congress shall not have exercised the power conferred on it." This would be true, we have no doubt, if restricted to a case in which a State may have attempted to exercise powers which are prohibited to it by the Federal Constitution; but the objection goes much further, and assumes that the mere grant of commercial power to Congress, although never exercised, *per se* operates, to deprive the States of all power which *might* be exercised by Congress on the same subject.

A re-examination of the authorities tending to elucidate the subject has confirmed the opinion already indicated by us in the decision of this case, that the grant of power to Congress " to regulate commerce among the several States" does not, of itself, in all cases, exclude the States from exercising authority over its subject-matter, and that it is not the mere existence of such a power, but its exercise by Congress, which may be incompatible with the exercise of the same power by the States; and, therefore, the States may legislate on the subject, in the absence of congressional regulations. .( *Cooley vs. Board of Wardens of Port of Philadelphia*, 12 *Howard*, 299; *Wilson vs. Black Bird Creek Co.*, 2 *Peters*, 251; 12 *Alabama*, 197.)

2d. The counsel, referring to the act of Congress of 1789, suggest " that the court has either misconceived the meaning and effect of the act, or has been very inaccurate and misleading in the statement of the proposition;" and insists that the clause of that act which reserves to suitors a common law remedy, relates only to such remedies as the common law is competent to give,

without being modified or improved by statute, and argues that the right given by statute to have an apportionment of the damages sustained by a collision, where both boats were mutually in fault, is not a common law remedy, but an incident of the jurisdiction of a court of admiralty, and can only be enforced by the Federal judiciary.

As the legislative enactment enlarges the power of the court, by enabling it to give redress in a state of case and in a mode not provided for by the common law unaided by statute, it may be said to confer on the court additional jurisdiction. But, as the *exclusive* cognizance conferred on the Federal court by the act of Congress of 1789 relates only to " civil causes of admiralty and maritime jurisdiction," it is obvious that a statute of a State regulating the proceedings in a personal action like this, which, as shown in the opinion, is not within the definition of a suit in admiralty, is not repugnant to the act of Congress of 1789, although the statute, as it relates to the subject of commerce, may be such as Congress might have constitutionally prohibited by giving to the Federal courts a more comprehensive jurisdiction than that conferred by the act of 1789.

And if it were true, therefore, as contended, that the recovery in this case being in accordance with a statutory provision, rather than a common law rule unaided by statute, the plaintiff's remedy, as adjudged, was not a common law remedy within the meaning of the reservation of the act of Congress; still, it does not result that there is any incompatibility between the law as administered in this case and the act of Congress; but, as is sufficiently expressed in the opinion, we regard the statute of this State, so far, at least, as it applies to this

case, as simply modifying the common law remedy, which is expressly reserved to suitors in the act of 1789.

It is contended, however, that, as the statute referred to, in literal phraseology provides, in cases of collision by mutual fault, for the apportionment of losses "between the two boats," that it is alone applicable to proceedings *in rem*, and did not authorize an apportionment of losses in this personal action between the owners of the two boats; but it does not seem to us that the statute is liable to this restricted construction, or that the Legislature, in its adoption, could have intended that it should be so limited in its application.

Without further elaborating this response, which we have been led to make by the suggestions of the petition, it may suffice to say, that, after a careful review of the grounds of our opinion delivered in this case, none of the conclusions expressed in it have undergone any change.

The petition is therefore overruled.